# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X
SMILE FOR KIDS, INC. d/b/a S4K
ENTERTAINMENT GROUP,

                          *Plaintiff,*

    - against -

BROOKLYN NETS, LLC,
                         *Defendant.*
-----------------------------------------------------------------X

Index No.: _____/2019

**SUMMONS**

Plaintiff designates Kings County as the Place for Trial

Pursuant to CPLR 503, the basis of venue is Defendant's residence

**TO THE ABOVE NAMED DEFENDANT:**

      **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the State of New York, Kings County located at 360 Adams Street, in the County of Kings, City of New York and State of New York, within the time provided by law as noted below and to file your answer to the attached Complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the relief demanded in the Complaint, together with the costs and disbursements of this action.

Dated:   New York, New York
           October 28, 2019

                                   /s/ _____
                                   Darren Oved, Esq.
                                   Andrew J. Urgenson, Esq.
                                   James Reilly, Esq.
                                   OVED & OVED LLP
                                   *Attorneys for Plaintiff*
                                   401 Greenwich Street
                                   New York, New York 10013
                                   Tel: 212.226.2376

NOTE: The law provides that: (a) if this summons is served by its delivery to you personally within the State of New York, you must appear and answer within TWENTY days after such service; or (b) if this summons is served by delivery to any person other than you personally, or is served outside the State of New York, or by publication, or by any other means other than personal delivery to you within the State of New York, you are allowed THIRTY days after proof of service is filed with the Clerk of the Court within which to appear and answer.

DEFENDANT'S ADDRESS:

Brooklyn Nets, LLC
168 39th Street
Brooklyn, New York 11232

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X
SMILE FOR KIDS, INC. d/b/a S4K	INDEX NO.:
ENTERTAINMENT GROUP,

      *Plaintiff*,

   - against -      **COMPLAINT**

BROOKLYN NETS, LLC,

      *Defendant.*
------------------------------------------------------------------X

  Plaintiff Smile for Kids, Inc. d/b/a S4K Entertainment Group ("S4K"), by its attorneys, Oved & Oved LLP, complaining of Defendant Brooklyn Nets, LLC (the "Brooklyn Nets," or "Defendant"), upon information and belief, alleges as follows:

## SUMMARY OF CLAIMS

  1. S4K is a licensed ticket broker that sells tickets to entertainment and sporting events, including Brooklyn Nets professional basketball games. A significant portion of S4K's revenue is generated by re-selling Brooklyn Nets tickets that S4K purchases from season ticket holders who wish to re-sell their tickets to certain games, as is their right under New York law.

  2. In violation of New York law, Defendant, along with its affiliate BSE Global ("BSE") has engaged in a pattern and practice of systematically terminating the season ticket memberships ("Memberships") of individual Brooklyn Nets season ticket holders in order to prevent those individuals from exercising their resale rights.

  3. Defendant is engaging in these unlawful and predatory practices in an attempt to destroy the ability of S4K, other ticket brokers, and season ticket holders to re-sell Brooklyn Nets tickets. Defendant's goal is to eliminate competition in the market for Brooklyn Nets tickets, and to instead funnel all resales of Brooklyn Nets tickets though its preferred ticket broker and profit-sharing partner, Dynasty Sports & Entertainment ("Dynasty"). Dynasty's co-founder and former

President was for many years a Vice President of BSE prior to founding Dynasty, and is currently a Senior Vice President of BSE.

4. Defendant essentially seeks to create a monopoly over the resale of Brooklyn Nets tickets, which serves to raise the prices that ticket purchasers pay for Brooklyn Nets tickets.

5. To accomplish this goal, Defendant not only relies on its improper termination of Memberships, but also the chilling effect that such terminations have on other Brooklyn Nets season tickets holders who may also seek to exercise their right to re-sell their tickets, resulting from the fear that Defendant will improperly terminate their Memberships as well.

6. Defendant's actions are in direct violation of the New York Arts and Cultural Affairs Law (the "ACAL"), which (i) created a free market for the resale of tickets to sporting and arts events; (ii) prohibited venues from revoking individuals' season tickets based solely on those individuals' resale of those tickets; and (iii) protected the right of resale at any price and through any legal medium.

7. Defendant's unlawful conduct has resulted in severe damage to S4K's business, as well as to the ticket-buying public at large. In addition to monetary damages, S4K seeks equitable relief enjoining Defendant from unlawfully terminating the Memberships of Brooklyn Nets season ticket holders so as to prevent them from exercising their rights under New York law to re-sell their tickets to S4K.

## THE PARTIES

8. S4K is a New York corporation located at 362 Fifth Avenue, New York, New York.

9. The Brooklyn Nets, which operates a professional basketball organization that competes in the National Basketball Association ("NBA"), is a New Jersey limited liability company located at 168 39th Street, Brooklyn, New York, and is authorized to do business in the

State of New York. BSE, an affiliate of the Brooklyn Nets, is located at 168 39th Street, Brooklyn, New York, and is authorized to conduct business in the State of New York. BSE owns and/or controls the Brooklyn Nets, as well as the venue in which the Brooklyn Nets play home basketball games—known as the Barclays Center.

## JURISDICTION / VENUE

10. This Court has personal jurisdiction over Defendant pursuant to CPLR 301 because Defendant resides within the State of New York.

11. Venue is proper in Kings County pursuant to CPLR 503(a) because Brooklyn Nets, LLC resides within Kings County.

## FACTUAL ALLEGATIONS

A. **S4K's Business**

12. S4K is licensed in New York, among other jurisdictions, as a ticket broker and re-seller.

13. A significant portion of S4K's revenue is generated by re-selling tickets to individual Brooklyn Nets games. S4K purchases many of the tickets it re-sells from Brooklyn Nets season ticket holders, who from time to time wish to re-sell those tickets to others for various different reasons, including being unable to attend certain games, disinterest in certain matchups, or simply to make a profit on highly in-demand games.

14. By providing this service of re-selling tickets, S4K increases the supply of available tickets by allowing tickets that would otherwise go unused to be used, which allows members of the public who would otherwise be unable to attend Brooklyn Nets games to attend those games.

NYSCEF DOC. NO. 1
INDEX NO. 523523/2019
RECEIVED NYSCEF: 10/28/2019

Case 1:19-cv-06062-DLI-SMG   Document 1-1   Filed 10/28/19   Page 6 of 19 PageID #: 10

**B.     The ACAL Expressly Protects Season Ticket Holders'
Right to Re-Sell Their Tickets to Brokers and Others**

15.     In 2007, the New York State legislature amended the ACAL in order to, *inter alia*, protect the rights of season ticket holders who chose to re-sell their tickets. The memorandum in support of the amendment to the ACAL stated:

> Recently professional sports teams in New York have placed restrictions on the methods by which their season ticket holders may resell tickets. The venues have used the threat of revocation or in some cases have actually revoked season tickets when fans sold one or more tickets through a medium not authorized by the venues. ***This legislation would prohibit the venues from revoking season tickets or the contractually agreed upon right of first refusal to purchase future tickets when such revocation is based solely on the basis of resale . . . . It is the intention of this legislation to accommodate the resale of all types of tickets, including*** single performance, ***subscription and season tickets in a free and open marketplace. Therefore, this legislation protects the right of resale at any price and through any legal medium.***

New York State Assembly Memorandum in Support of Legislation, Bill No. A7526A (emphasis added).

16.     In keeping with the intent of the ACAL to protect the rights of ticket re-sellers, ACAL § 25.30(1)(a) provides that

> it shall be prohibited for any operator of a place of entertainment, or operator's agent, to [r]estrict by any means the resale of any tickets included in a subscription or season ticket package as a condition to purchase, as a condition to retain such tickets for the duration of the subscription or season ticket package agreement, or as a condition to retain any contractually agreed upon rights to purchase future subscription or season ticket packages . . . .

17.     The ACAL also requires certain entities engaged in the business of re-selling tickets to obtain a license from the State of New York. However, ACAL § 25.03(8) expressly exempts from that requirement, *inter alia*, "any person, firm or corporation which purchases any tickets solely for their own use or the use of their invitees, employees and agents."

18.     While operators such as the Brooklyn Nets retain certain ticket revocation rights, New York law prohibits them from exercising those rights arbitrarily or capriciously.

C. **Defendants' Unlawful Termination of Individuals' Season Ticket Memberships**

19. Contrary to the letter and spirit of the ACAL, Defendant has engaged in, and continues to engage in, a pattern and practice of unlawfully terminating individuals' Memberships in order to prevent those individuals from exercising their right to re-sell certain tickets that they are unable to use.

20. Defendant's pattern and practice includes manufacturing pretextual reasons for these unlawful terminations in a thinly-veiled effort to disguise their illegality.

21. The first step in Defendant's scheme is to send an email to the individual season ticket holder who is the target of Defendant's unlawful termination practices. In these emails, Defendant falsely accuses the season ticket holder in question of "violat[ing] New York law by reselling [his or her] Brooklyn Nets season tickets without a New York Ticket Reseller License," and threatens to terminate his or her Membership unless he or she provides a copy of his or her New York Ticket Reseller License.

22. Such accusations are entirely meritless because the individual season ticket holders in question are not required to have a license to re-sell their tickets.

23. Pursuant to Defendant's unlawful pattern and practice, if the unassuming season ticket holder is unable to produce a "New York Ticket Reseller License," Defendant unlawfully terminates the ticket holder's Membership.

24. If individual season ticket holders respond to Defendant's false accusations by explaining that they do not need to be licensed, or that they sold their tickets to a licensed ticket broker, Defendant manufactures a different pretextual basis for termination.

25. By way of example, Defendant will vaguely accuse those individuals of re-selling their tickets to a licensed ticket broker "linked to multiple accounts," and then ignore any and all of the individual's requests for further information.

26. These abrasive attacks on Brooklyn Nets season ticket holders are designed not only to unlawfully terminate Memberships, but also to send the chilling message to other season tickets holders or potential season ticket holders that they risk the unlawful termination of their Memberships in the event they seek to exercise their protected ticket resale rights.

27. Regardless of Defendant's pretexts, their unlawful terminations violate the ACAL, which expressly protects individuals' rights to re-sell their tickets, including to ticket brokers who, by the nature of their business, also sell other tickets to Brooklyn Nets games.

28. S4K is aware of at least 15 individuals who have resold Brooklyn Nets tickets to S4K and have had their Memberships terminated pursuant to the above-described unlawful pattern and practice to prevent them from exercising their right to re-sell their Brooklyn Nets tickets to S4K.

D. **Defendant Is Violating the ACAL to Stifle Competition in the Market for Brooklyn Nets Tickets at the Expense of Consumers**

29. Defendant seeks to prevent season ticket holders from exercising their rights to re-sell their Brooklyn Nets tickets in order to stifle competition and monopolize the market for Brooklyn Nets tickets so that Defendant can exploit its close insider relationship and profit-sharing partnership with Dynasty.

30. Dynasty is a ticket broker and self-described "[i]ndustry leader in yield management and distribution solutions to meet all your ticketing needs." Dynasty's co-founder and former president was a vice president of Defendant's affiliate, BSE, for several years prior to joining Dynasty. After a four-plus year tenure at Dynasty, that individual left Dynasty and has since re-joined BSE as a Senior Vice President.

31.     Since as early as 2015, Defendant has been diverting to Dynasty ***thousands*** of Brooklyn Nets tickets for resale, in apparent contradiction of Defendant's own policy of limiting every other season ticket holder to four tickets each.

32.     Specifically, Defendant has entered into long-term deals that allow Dynasty to re-sell ***more than four thousand Brooklyn Nets tickets per game (over 25% of the entire capacity of the Barclays Center), and maybe many more***.  Moreover, because Defendant has rights to share in Dynasty's profits from selling Brooklyn Nets tickets, Defendant's objective is to maximize Dynasty's ticket inventory and prices.

33.     Defendant has thus unlawfully restricted the ability of S4K and other brokers to re-sell Brooklyn Nets tickets on behalf of "multiple" season ticket holders, while at the same time granting to Dynasty the ability to re-sell more than a quarter of the Brooklyn Nets tickets available for any given game.

34.     In undertaking the above-described conduct, Defendant is trying to destroy the ability of S4K, season ticket holders, and other brokers to participate in the lawful sale of Brooklyn Nets tickets, and instead to allow Defendant and Dynasty to collude to monopolize the market for Brooklyn Nets tickets so that Defendant can reap as much profit as possible, at the expense of consumers and competition in the market.

35.     As the United States Government Accountability Office has stated, the resale market for event ticketing is generally considered to be more competitive than the primary market because of the large numbers of brokers participating in the secondary market.  Necessarily, if the large numbers of brokers are reduced by anti-competitive conduct to a few or even one broker, competition in the resale market for tickets is severely curtailed.

36.     As the American Antitrust Institute has found, relationships between primary ticket sellers such as Defendant, and secondary ticket sellers such as Dynasty, can reduce inventory for

rival secondary ticket sellers and, in turn, can result in higher fees, as the primary ticket seller essentially has a monopoly over both markets.

37. Defendant's unlawful pattern and practice, as described above, prevents S4K, season ticket holders, and other brokers from participating in the market for Brooklyn Nets tickets and has the effect of eliminating competition in the market for Brooklyn Nets tickets.

38. Defendant's severe restraint on competition has the effect of tending to increase prices in the resale market for single-game Brooklyn Nets tickets, because it eliminates Dynasty's competition in that market and gives Dynasty power to dictate prices to individual consumers.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

39. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

40. As set forth herein, a bona fide justiciable and substantial controversy exists concerning whether Defendant's course of conduct violates ACAL § 25.30.

41. The parties herein have adverse legal interests as to both present and prospective obligations.

42. A declaratory judgment would serve the useful purpose of clarifying and settling the legal issues.

43. A declaratory judgment would finalize the controversy and offer relief from uncertainty.

44. Accordingly, S4K is entitled to a judgment declaring that Defendant's course of conduct violates ACAL § 25.30.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunctive Relief)

45. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

46. It is essential that injunctive relief be granted: (i) enjoining and restraining Defendant from unlawfully terminating individuals' Memberships in violation of the ACAL; and (ii) compelling Defendant to reinstate those Memberships that it has unlawfully terminated.

47. Defendant's conduct has caused and continues to cause irreparable harm to Brooklyn Nets season ticket holders and to S4K because those season tickets are unique, limited, and cannot be replaced.

48. Absent injunctive relief, Defendant is likely to continue to violate the ACAL by terminating individuals' Memberships to prevent those individuals from exercising their right pursuant to the ACAL to re-sell their tickets.

49. The granting of injunctive relief imposes no hardship on Defendant because it merely requires Defendant to comply with the statutory protections of the ACAL.

50. S4K is further entitled to injunctive relief pursuant to ACAL § 25.33, which confers a private right of action for, *inter alia*, injunctive relief for violations thereof.

51. S4K has no adequate remedy at law with respect to Defendant's continued violation of the ACAL.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of New York Arts & Cultural Affairs Law § 25.30(1)(A))

52. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

53. Defendant's pattern and practice of terminating individuals' Memberships in order to prevent them from exercising their rights to re-sell certain of their tickets to S4K violates the letter and spirit of the ACAL as set forth more fully above.

54. Defendant's pattern and practice is an attempt to empower Defendant with the discretion to terminate and/or not renew any Membership on the basis that the individual associated with the Membership is a re-seller and/or uses the services of a re-seller, which is precisely what the ACAL prohibits.

55. Rather than comply with the protections afforded re-sellers pursuant to the ACAL, Defendant is instead attempting to prevent any re-sale of Brooklyn Nets tickets other than by Dynasty.

56. To accomplish its goal, Defendant is severely limiting S4K's supply of Brooklyn Nets tickets and seeks to eliminate S4K (and other re-sellers) from the marketplace altogether.

57. By doing so, Defendant is gutting the protections of the ACAL and is impeding the "free and open marketplace" for ticket re-selling that the New York State Legislature intended to protect and foster by the passage of the ACAL.

58. Accordingly, S4K is entitled to injunctive relief and monetary damages pursuant to ACAL § 25.33.

59. S4K is also entitled to recover reasonable attorneys' fees pursuant to ACAL § 25.33.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Tortious Interference with Advantageous Business Relationship)

60. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

61. S4K had business relationships with the individual season ticket holders whose Memberships Defendant unlawfully terminated. Namely, S4K purchased tickets from and/or sold tickets on behalf of those individuals.

62. Defendant knew of those relationships, and indeed, sought to punish those individuals who exercised their right under New York law to re-sell tickets to or through S4K, by terminating those individuals' Memberships.

63. By terminating the Memberships of individuals who have a business relationship with S4K, which effectively put Brooklyn Nets season ticket holders on notice that selling their tickets to or through S4K could jeopardize their Memberships, Defendant intentionally interfered with those business relationships.

64. Defendant's wrongful conduct was conducted with the specific intention of interfering with S4K's relationships with season ticket holders, as well as S4K's relationships with its customers and prospective customers. But for Defendant's interference, S4K would not have suffered such injuries.

65. Defendant's interference was through improper means, *i.e.*, unlawful conduct designed to prevent season ticket holders from exercising their rights under New York law to re-sell their Brooklyn Nets tickets.

66. Defendant's interference caused injury to S4K's business relationships with not only those individual season ticket holders whose Memberships were terminated, but also with other individual season ticket holders, customers, and prospective customers, in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Antitrust – Sherman Act § 1 – Unlawful Restraint of Trade)

67. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

68. Defendant has unreasonably restrained trade through a series of coordinated agreements and acts to limit competition in the market for sale of Brooklyn Nets tickets.

69. Defendant's agreements and acts, which show a conscious commitment to a common scheme, include: (i) Defendant's actions to terminate or threaten to terminate the Memberships of season ticket holders who exercise their rights to re-sell their tickets to anyone "linked to multiple accounts," including licensed ticket brokers, and (ii) Defendant's sale of **thousands of Brooklyn Nets tickets per game** to Dynasty, with the knowledge and intent that those tickets would be re-sold by Dynasty.

70. Defendant's acts are being undertaken with the common design to exclude and eliminate competition in the market for Brooklyn Nets tickets, and for the purpose of controlling the supply and prices thereof in all markets, including the resale market.

71. As a result of Defendant's acts, competition in the market for Brooklyn Nets tickets has been diminished and/or eliminated, which has had the effect of raising prices for Brooklyn Nets tickets.

72. There are no legitimate business justifications or efficiencies for Defendant's coordinated agreements and acts that would counterbalance their demonstrated anticompetitive effects.

73. Defendant's acts constitute violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, *per se*, under a "quick look" standard, and under the rule of reason.

74. S4K has been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, and which amount is subject to trebling pursuant to 15 U.S.C. § 15(a).

### AS AND FOR AN SIXTH CAUSE OF ACTION
### (Antitrust – Sherman Act § 2 – Conspiracy to Monopolize)

75. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

76. Defendant's conduct in foreclosing competition in the market for Brooklyn Nets tickets constitutes a conspiracy to monopolize that market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

77. To foreclose competition in the market for Brooklyn Nets tickets, Defendant has engaged in efforts to (i) ensure that Dynasty has monopolistic power over the resale of Brooklyn Nets tickets; and (ii) preclude competitor ticket brokers, including S4K, from competing with Dynasty by, *inter alia*, preventing Brooklyn Nets season ticket holders from exercising their right to re-sell their tickets to licensed ticket brokers. Defendant has willfully, knowingly, and with specific intent to do so, conspired to monopolize the markets for Brooklyn Nets tickets, including the resale market.

78. If Defendant's exclusionary conduct is allowed to continue, there is a dangerous likelihood that it, along with Dynasty, will monopolize the markets for Brooklyn Nets tickets, including the resale market.

79. There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the market for Brooklyn Nets tickets.

80. As a result of Defendant's violation of Section 2 of the Sherman Act, S4K has been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to 15 U.S.C. § 15(a).

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(Antitrust – Sherman Act § 2 – Attempted Monopolization)

81. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

82. Defendant's conduct in foreclosing competition in the market for Brooklyn Nets tickets constitutes an attempt to monopolize that market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

83. To foreclose competition in the market for Brooklyn Nets tickets, Defendant has engaged in efforts to (i) ensure that Dynasty has monopolistic power over the resale of Brooklyn Nets tickets; and (ii) preclude competitor ticket brokers, including S4K, from competing with Dynasty by, *inter alia*, preventing Brooklyn Nets season ticket holders from exercising their right to re-sell their tickets to licensed ticket brokers. Defendant has willfully, knowingly, and with specific intent to do so, conspired to monopolize the market for Brooklyn Nets tickets.

84. If Defendant's exclusionary conduct is allowed to continue, there is a dangerous likelihood that it, along with Dynasty, will monopolize the markets for Brooklyn Nets tickets, including the resale market.

85. There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the market for Brooklyn Nets tickets.

86. As a result of Defendant's violation of Section 2 of the Sherman Act, S4K has been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to 15 U.S.C. § 15(a).

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Antitrust – Donnelly Act)

87. S4K repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

88. Defendant's coordinated efforts to foreclose competition in the markets for Brooklyn Nets tickets, including the resale market, constitute a violation of the Donnelly Act, New York General Business Law § 340.

89. Defendant's acts, which show a conscious commitment to a common scheme, include: (i) Defendant's actions to terminate or threaten to terminate the Memberships of season ticket holders who exercise their rights to re-sell their tickets to anyone "linked to multiple accounts," including licensed ticket brokers, and (ii) Defendant's sale of *thousands of Brooklyn Nets tickets per game* to Dynasty, with the knowledge and intent that those tickets be re-sold in the market for Brooklyn Nets tickets.

90. Defendant's coordinated agreements and acts are being undertaken to exclude and eliminate competition in the markets for Brooklyn Nets tickets, including the resale market, and for the purpose of controlling the supply and prices thereof.

91. As a result of Defendant's acts, competition in the market for Brooklyn Nets tickets has been diminished and/or eliminated, which has had the effect of raising prices for Brooklyn Nets tickets.

92. There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the markets for Brooklyn Nets tickets.

93. As a result of Defendant's violation of the Donnelly Act, S4K has been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to New York General Business Law § 340(5).

**WHEREFORE**, S4K respectfully demands relief as follows:

   a. On the First Cause of Action, a declaratory judgment that Defendant, in terminating season ticket holders' Memberships so as to prevent them from exercising their resale rights under the ACAL, is in violation of the ACAL.

   b. On the Second Cause of Action, an order: (i) enjoining and restraining Defendant from unlawfully terminating individuals' Memberships in an effort to prevent those individuals exercising their resale rights under the ACAL; and (ii) compelling Defendant to reinstate those Memberships that it has unlawfully terminated.

   c. On the Third Cause of Action for violation of the ACAL, a money judgment against Defendant in an amount to be determined at trial, as well as S4K's attorney's fees pursuant to ACAL § 25.33.

   d. On the Fourth Cause of Action for tortious interference with advantageous business relationship, a money judgment against Defendant in an amount to be determined at trial.

   e. On the Fifth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

   f. On the Sixth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

   g. On the Seventh Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

   h. On the Eighth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

   i. An award of S4K's reasonable attorneys' fees, costs, and expenses incurred in connection with this action and any other post-Judgment collection efforts, to the extent not already awarded; and

j. Such other, further, and different relief as the Court deems just and proper.

Dated: New York, New York
October 28, 2019

_____
Darren Oved, Esq.
Andrew J. Urgenson, Esq.
James Reilly, Esq.
OVED & OVED LLP
*Attorneys for Plaintiff*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376